Good morning, your honors, and may it please the court. My name is Ana Lovelace-Owen, and I, along with Olivia Medina, are student co-counsel representing the petitioner, Mr. Brian Maie. We are here on behalf of the Hastings Appellate Project, supervised by Leah Sparrow and Gary Watt. I intend to watch the clock and reserve three minutes of my time for rebuttal. The Hawaii Theft Statute does not qualify as a crime involving moral turpitude because it is not a categorical match to the federal generic definition of a CIMT. Three subsections of the Hawaii Statute do not include the intent to deprive either permanently or substantially that is required to make a theft CIMT determination. Isn't it actually four? The shoplifting provision doesn't have that either. The shoplifting provision has intent to defraud but not to deprive. That is correct, your honor. However, because the shoplifting subsection of the statute has intent to defraud, it would qualify as a fraud CIMT. We've got an unpublished opinion, and of course we don't rely on our unpublished authorities, but to kind of cut to the chase a bit, isn't subsection 6 the least serious? Haven't we said that? That's correct, your honor. This court has already addressed subsection 6 in Greve v. Sessions. As your honor pointed out, it is an unpublished decision. Though the convictions in Greve v. Sessions happened prior to the Diaz-Lizarraga decision, the analysis still stands that subsections 5, 6a, and 6b criminalize more conduct than the federal generic definition of a theft CIMT, which was prescribed in Diaz-Lizarraga requiring this intent to deprive either permanently or substantially. And so under Moncrief v. Holder, looking at the least of the acts criminalized, it is these three subsections which render the Hawaii statute categorically overbroad. Okay, so I'm going to ask you to focus on the subsection 6, because we don't have a whole lot of time. So my first question is, do you agree that's the least serious? Yes, your honor. We do agree that subsection 6 is the least serious, particularly subsection 6b, which focuses on the failure to make payments at a specific time in the employment context. For instance, in that situation, an individual could be convicted of theft under subsection 6b when failing to pay an employee on the day they are required to pay that employee. Okay, counsel, I'm going to take that as a yes. Okay, if I could get then to my question. I don't see any, because I agree with you on that point, and I'm trying to just get the foundation established here for the question, which I don't see in your analysis anywhere where you've grappled with the commentary. The commentary does indicate that Hawaii incorporates the model penal codes definition. That's correct, your honor. The Hawaii legislature has incorporated the model penal code definition. However, the Hawaii Supreme Court has indicated that subsection b does not have the intent to deprive, which is required in… Permanently deprive. Permanently deprive. Permanently or… Right. Yes, exactly. And so that's critical. It's the statutory definition of deprive that we're missing here in this subsection. So when you talk about the Hawaiian Supreme Court, are you now talking, speaking of Gaylord? Is that what you're referring to? Yes, your honor, that's correct. Okay, and in Gaylord, that seems to be important because in Gaylord they had an opportunity to identify the elements of this offense and they did not include an intent to permanently deprive, if I can understand your argument. Is that right? That's correct. And in a footnote in Gaylord, footnote 20, the Hawaii Supreme Court also indicated that subsection 6a requires or prescribes a situation where the actor deals with appropriated property as his or her own and fails to make the required payments or disposition and intentionally does so. And although this is intentional conduct, this does not rise to the level of an intentionally depriving the owner of their property either permanently or substantially. And I think it's also important to note that in Gaylord, the Hawaii Supreme Court was not making a CIMT analysis. It was loosely applying an intent to deprive standard. However, under the CIMT analysis, there is a very narrow standard for a conviction to qualify as a theft CIMT, and that is the Diaz-Lizarraga standard of the intent to deprive either permanently or substantially. Gaylord's all we've got. We don't have, in this particular case, we've got an offense that is on the scale of things so minor there isn't, as I understand it, there isn't a right to a jury trial. So there's no jury instruction. So we're grappling with what is it? And I don't know that there's any other authority to look to, is there? Well, Your Honor, there are pattern jury instructions for subsections 5, 6A and 6B. And if we look to the jury instructions, for example, for subsection 6B, the jury needs to find that the defendant obtained personal services from an employee, did so with an agreement or known legal obligation to make a payment on account of the employment and failed to make payment or disposition at the proper time and acted intentionally in doing so. So this goes back to the example I used earlier of failing to make a payment at the proper time and doing so intentionally, perhaps on the next day. And Gaylord, isn't the thrust of it that there really is an intention deprived element because it's dealing with the appropriate property as his or her own and failing to make, with an intent to appropriate the value of the property for his own benefit? How is that different than depriving somebody of substantial value of their property? Your Honor, it is distinct because the standard in Diaz-Lizarraga is having the intent to deprive in a substantial way. And so this type of conduct that is prescribed under subsection 6 of the Hawaii theft statute criminalizes conduct which does not include substantial or permanent deprivations. For example, in the Arizona shoplifting statute that was analyzed in Diaz-Lizarraga, the prosecutor needed to prove and a jury needed to find in every commission of shoplifting in that statute the intent to deprive either permanently or substantially. I understand your point about the employment subsection, but this subsection, A, which if you're dealing with the appropriate property as his or her own, and why isn't that substantially depriving you of the value of it? I don't understand the difference. Your Honor, this court can look to the decision of State v. Pleasant Hill, which although it is a Maine Supreme Court decision, the Hawaii courts have looked at that decision for guidance when adjudicating subsection 6A. And State v. Pleasant Hill analyzes an identical Maine statute, and there the issue was the commingling of funds. So an individual's conviction was upheld by the Maine Supreme Court of theft of trust property or the commingling of funds, even though the funds were ultimately returned to the original owners. And in that decision, the Maine Supreme Court highlighted that the criminality occurred at the moment the funds were commingled. And so despite the fact that the funds were ultimately returned, and therefore there is no intentional deprivation in a permanent or substantial way, the conviction was upheld. And so this is indicative of the fact that the Hawaii statute criminalizes conduct which does not fall under the Diaz-Lazaraga standard, and therefore is categorically overbroad and should not serve as grounds for removal under the categorical approach. So what do you do with the commentary? Oh, forgive me, Judge Berzon, please go ahead. Well, you can discuss the commentary, and then you can discuss the divisibility issue, which seems to me to be the hard one. And then you can discuss whether if we agreed with you on the divisibility issue, we need to remand on the modified categorical approach. Certainly, Your Honor, to address the commentary first, the commentary of the model penal code has indicated that a statute like subsection 6A walks the line between civil and criminal liability. And so the fact is that although there may be some sort of intentional conduct that is prescribed, it is not the intentional conduct that rises to the level of the Diaz-Lazaraga standard, which is this very narrow intent to deprive either permanently or substantially. Basically, what you're saying about the commentary is it can't be accurate because the statute in several different places, including in the shoplifting section, does not have an intent to deprive. It's just not there. So there must have been something like, you know, when it says intention to deprive, we mean the same thing as the model penal code meant, but not that every subsection has it because it clearly doesn't. I mean, that's the end of it now. Except it wouldn't need that because that's where it says deprive, Hawaii defines deprive. So I'm trying to make sense of what that commentary does, unless it's just another statement of the statutory definition of to deprive. I think that it's important to highlight the fact that for making a CIMT determination, there has been set forth this very clear rule from the Diaz-Lazaraga decision in this intent to deprive either permanently or substantially. And although the model penal code commentary and the statutory definition addresses the intent to deprive, it is not to the same level of the Diaz-Lazaraga requirement and therefore does not categorically qualify. You think the definition of deprive in the Hawaii statute is not adequate for Lazaraga purposes? Yes, Your Honor. And I think that's because it's in the... Wait a minute. Wait a minute. Sorry. To be clear, to answer Judge Berzon's question, are you saying, yes, you think it is inadequate or no, it's not? No, it's not. It's the definition of intent to deprive in the statutory context just doesn't rise to the level of the Diaz-Lazaraga requirement because it is not in the CIMT realm. And the CIMT designation also does not... All criminal conduct does not qualify within the CIMT designation. It's the definition in the Hawaii statute, right? Of deprive. Yes, Your Honor. And is it, insofar as the statute has an intent to deprive, is it adequate for immigration purposes? Yes, the definition is adequate. What about the divisibility question? I'd like to get to the divisibility. If you agree that the statute is not a categorical match, what's your best authority that the statute is indivisible? The statute is indivisible because of the application of the unanimity rule. And this court has most recently affirmed the unanimity rule in Lazo v. Wilkinson and prior to that in Lopez Valencia v. Lynch, where if the jury need not agree on the version of theft that was committed in order to convict an individual of theft, then that... I know that. What's your... We know that part. Why do you think the jury doesn't need to agree? Well, the Hawaii courts have applied the unanimity rule to the theft statute. In State v. Clattenhoff, the Hawaii Supreme Court found that there was substantial evidence that the appellant's conviction of theft could be upheld, despite varying versions of, varying theories of theft. But that's first-degree theft, and they rely on 835 to reach that result, right? That's correct, Your Honor. So aren't you really relying on 835? Well, in that case, they also pointed to the fact that 835 supports the presentation of evidence to prove theft under 830, which is the prescription of the varying versions of theft. And additionally, in State v. Luong, the Hawaii Intermediate Court of Appeals affirmed a conviction where the defendant was prosecuted based on varying versions of theft that were presented to the jury. So the Hawaii courts applied this unanimity rule, and therefore the statute is indivisible. But don't, excuse me, but don't some of these other sections that I think you're arguing are means, not separate offenses, are alternative means and not offenses, if I followed your brief correctly. Don't they, do they not include certain elements that are not included in the offense that your client's charged with here? Well, when making the divisibility analysis, the underlying facts of this case do not come into play unless this court finds that the statute is divisible. And then the court can look at the underlying documents that we have available on the record here. Well, aren't we supposed to take a peek to help us figure out whether or not, I thought our case law asked, you know, kind of has suggested or strongly suggested that we do that to see whether or not, you know, how similar or not the different statutes of the different sections are. Not necessarily, Your Honor. However, even if the court were to look at the underlying facts of this case, the Sheppard documents that we have available here do not indicate which version of theft Mr. Mai pled no contest to. And so this is insufficient to demonstrate that he did harbor any sort of intent to deprive and that that can serve as... The version that was cited was 833.1, which is the theft in the fourth degree, which includes all of the subsections. Belangwood did intentionally obtain or exert unauthorized control, which would be subsection 1 of 833. That is correct, Your Honor. However, the record only indicates that the immigration judge pointed to the mens rea, the intent that was included in the complaint. And the intent included in the complaint is not sufficient under Pannuliar v. Mukasey to demonstrate which version of theft Mr. Mai... That has to do with the modified categorical... That's right, Your Honor. I'm willing to go as far as saying that we don't need to remand to the BIA to decide the divisibility question. But why don't we have to remand to decide the modified categorical issue? Because under the disposition of the BIA's decision, where it was an unpublished decision relying on a non-controlling authority, the BIA's decision is given Skidmore deference. And under Skidmore deference... It's not given any deference in so far. We have a case, the Marilena case, which you cited for other purposes, but it says quite clearly that there's no deference to the BIA with regard to the construction of the state statute. So that's why I say, up until you get to the point of the modified categorical, my understanding is that the BIA is entitled to no deference, not only not to Skidmore deference. But then, when you get to the question of what actually happened here, that seems to be a quasi-factual question. I know that the case law tries to stay away from that, but it's a quasi-factual question in any event. In fact, the Supreme Court just essentially held that it is a factual question. And the... I forget the name of the case I just cited last week. So why don't we have to send it back to the BIA? If Your Honor is referring to the Pereira v. Wilkinson case, that case was decided under a different procedural grounds, looking for different terms of relief. However... I understand that, but as to whether it's a factual question or a legal question, it seems to me that... It's the burdens on the government, but it's still a factual, they say, question. And so, why don't we have to send it back to the Board? That's what I want to know. I mean, I'd rather... Honestly, this man's been in detention forever. He was committed... His crimes, imagine 16 days of a sentence. It would be very nice to not have to send it back, but I'd like to know why we don't have to do it. Certainly, Your Honor. That is because if this Court decides that the divisibility question and finds that the statute is indivisible, then there is no need to apply... I understand that. Right. I'm sorry, is your client still in detainment? Yes, Your Honor. Mr. Maia has been in detention for almost two years at this point. I think the government said something to the effect that he's no longer detained. Have you all conferred on this? Do you know for sure he's detained? To the extent of our knowledge, we believe that Mr. Maia is still in ICE custody and has been in ICE custody since the initiation of his removal proceedings. And what's the basis of your knowledge? I mean, have you talked to your client? Because I think the government's going to disagree, and I'm just trying to figure out who has the most accurate information. This was the information that was provided to the clinic through the administrative record and the information that was relayed to the Hastings Clinic as far as the representation we have been able to provide for Mr. Maia. I see that my time has elapsed and so... Wait a minute, wait a minute, wait a minute. As of when? That was provided to you as of when? That was provided to us as of the fall. Okay, so just to follow up on Judge Berzon's position, because we have a couple of different en banc cases that go to this, and I want to make sure I'm understanding that your position is that we decide the elements of the Hawaii statute de novo, and we decide divisibility, and your position is that we wouldn't remand if we decide it's indivisible, but are you conceding that we would if we decided it is divisible? Not necessarily, Your Honor, because the immigration judge did not forego an evidentiary hearing and the government had the opportunity to provide the evidence. There is ample evidence in the record to make the modified, to apply the categorical, the modified. So, in other words, then you're, I'm just really conscious of how far over time we are, so then your position is they had their shot and they didn't take it, is that right? That's correct, Your Honor. Okay, thank you. Thank you. Okay, thank you very much. We will give you a minute or so in rebuttal, and you did a lovely job, so thank you very much. Ms. Shea. May it please the Court. My name is Jacqueline Shea, and I represent an attorney general in this case. I ask this Court to come to the following two conclusions. One, the Court's decision in GWEB is not controlling because it involved a theft conviction that predated the Board's matter of dias literata decision. And two, if this Court finds Mr. May is not bound by his pleading admission, remand is warranted to the Board to determine in the first instance whether his conviction is categorically a crime involving warranted servitude. Can we go to the first one, please? Can we go to your first point? What difference does it make that that predates matter of literata? The unpublished decision that we've got is unpublished. It's certainly not binding. But it speaks to the structure of the Hawaii statute, which I think is unchanged, and it says that it's overly broad vis-a-vis the model penal code and indivisible. So why does Diaz-Lizarraga change that? Yes, Your Honor. The analysis by that panel in that decision heavily relies on the fact that the statute definition was the intent to deprive. It actually even cites the case Garcia-Martinez in its decision, which to say that the convictions were not retroactive, because in that case, Your Honor, he was convicted in 2010 and 2012. Additionally, I do see, Your Honor, that they did actually cite to Section, I think, 6 it was, as possibly being overbroad. But as you see, Your Honor, there's not a whole lot of analysis there. And just in general, looking at the context of the decision, I do think they heavily relied on the fact of the model penal code language, which has now changed. It's not binding on us. We have a real problem in this case, because you, the government, never briefed the merits of the, in any sense, in any adequate way, the merits of the question whether this is an overbroad statute, whether it's divisible, what if it's divisible, or anything else. And so we're operating, I mean, you're operating at a rather large disadvantage. I gather that at this point, you are willing to talk to the agent of merits in your brief. I mean, your brief basically has a bunch of avoidance issues and says very little about the merits of the divisibility question. Is that right? Yes, Your Honor, I agree with that. And I think the counsel, I think as writing it, as a government brief, kind of we're in that place where we don't really want to put forth what the agency should do here. So there was a little bit of analysis, but not a full analysis on the issue. Both the IJ and the BIA made a conclusion about whether this was a, whether the Hawaii statute in fact states a crime of moral turpitude. It just didn't do it in any lens of it. So, therefore, what is your, so you need to walk us through your argument. Is your argument that none of the subdivisions, all of the subdivisions are a crime of moral turpitude, or that it's divisible, or what is that? Well, Your Honor, I respectfully disagree because I think the board here did not, or the agency did not fully analyze it. Due to the tweeting admissions in this case. Okay. Yes, Your Honor. Can I point out, though, first of all, he has been released from detainment. I actually did check. Three, on March 8th, I confirmed of ICE. He has been released. He was released around the 17th of February. So he's no longer pending detention in this case. Additionally, Your Honor, I think the statute of conviction, although it wasn't briefed entirely, I agree, Your Honor, in our brief, that it is arguably a categorical CIMT in this case. It's one of those consolidated theft statutes that have both fraud CIMTs as well as theft CIMTs. In the brief, the petitioner only really contested subsection 5 and subsection 6, that they were not morally turpitudous. But there is an argument to be made. For one, the Hawaii law appears to require that the intent to deprive is for all of its theft offenses. It requires... Hold on. Right there, that's a very important point. Why does that appear to you to be the case, please? Hawaii law in Gaylord as well as, I think, Tamatitsu v. State, both of those decisions said that for all of its theft offenses require that, even though it's not ICE. No, they require intent. They don't. Gaylord does not say that. It says intent. It doesn't say intent to permanently deprive. That's the problem. And, Your Honor, if it wasn't... I see that obviously some of the provisions here specifically require intent to permanently deprive. Additionally, the ones that necessarily don't... But not all of them. Go ahead, Ann. You agree that not all of them require intent to permanently deprive. Some of them just say intentionally, right? Yes, Your Honor. Others say intent to deprive, and then other sections say intent to defraud. And so it seems problematic if we're looking at the text of the statute, which normally that's what we do. Here we have an interesting issue because of the commentary. And the commentary, I'm not quite sure what to make of it because of the explanation regarding it. It seems to say, hey, we mean, I guess, for everything to mean intent to deprive, not intent to permanently deprive, but intent to deprive. And so is that enough for a categorical match? Also understanding that the commentary is not supposed to be viewed as legislative intent. It's, I guess, some judge's counsel wrote the commentary. So I'm just not quite sure. If you're relying on the commentary, what's the best reason for us to follow that? And, Your Honor, just to make the government's position completely clear, we're not asking for you to know, Your Honor, to make that determination. We think the best course here is for you to remit to the board because this court often gives the Board of Immigration Appeals deference for those decisions of whether it is a categorical statute. Am I wrong in believing that our law is quite clear, that there isn't deference with regard to the construction of the state statute? And the reason is that the board has no expertise on the construction of state statutes. As to the federal statute, yes. But as to whether the state statute has an intention to deprive or doesn't have an intention to deprive, I don't think we owe the board any deference on that. You're correct, Your Honor. Just looking at the state law of Hawaii, yes, no deference for that. However, this court does give deference. You just said you want us to send that question back to the board as to what the role of the commentary is. And that exactly is about the meaning of the state statute. I apologize if it came out that way, but, Your Honor, what gives deference here is this is a consolidated theft statute. Arguably, a lot of the provisions could either fall in that CIMT fraud, CIMT theft. They could fall into either of those, whether it is an expressly fraudulent subprovision or inherently fraudulent provision. And that type of deference does go to the agency of what constitutes a CIMT. Yes, the applicable Hawaii law, that is something that this court can do, and deference is usually not determined, as well as potentially the question of divisibility. But, again, we don't get there until it's determined that this is not a CIMT, categorical CIMT on its face. Your Honors, additionally, I think some of that commentary, or some of the commentary about subsection 3, even if this is not in the, and this is something the board would do, obviously, is if it's not in the fraud CIMT category or not in the theft CIMT category, it could look to whether it is a general CIMT. And in this case, it's clear that that provision has intentional misconduct as well as reprehensible misconduct. It's clear from Gaylord. There is an argument in this case about the vagueness of the CIMT concept. And I understand that we have precedent in this court, and I've had my say about it, and I may have said all my say about it again, but this is a perfect example. I mean, here you have a situation where this man has taken something worth less than $250, didn't hurt anybody, didn't defraud anybody, as far as anything in the record shows, and we're going to say that he committed a crime of moral turpitude. And now you're saying that even if he didn't do that, he still may have committed a crime, and even if he didn't defraud anybody, and even if he didn't steal anything, and even if he didn't hurt anybody, he still may have committed a crime of moral turpitude. What does it mean? How are we supposed to know whether he did or didn't? Well, Your Honor, I mean, in one way, I mean, and I think, Your Honor, you brought it up earlier about the visibility, a way to look as a peak of the documents. Well, if you do take a peak of the record in this case, it's pretty clear, even though it doesn't specifically say he was charged with subsection 1, on administrative record 143 and 149, the complaint actually, the language tracks that exact subsection, which requires an intent to determinately deprive. So in this case, if the modified categorical approach, if it went that way, clearly, there would be no factual issue here. The records, the conviction records do show that in this case. And, Your Honor, I'm sorry, I didn't mean to just go to another question with yours. I'm aware, Your Honor, of your concurrences in many cases about being unconstitutional. Could you explain, just for the record, how you could have something that's not an injury, it's not a theft, it's not a, there's no fraud element, and yet we're supposed to tell from the words crime of moral interpretation that it still could be a crime of moral interpretation. Well, Your Honor, this court in Ortega v. Lotez actually gave Chevron deference to the board's conclusion that non-fraudulent CIMT did not require an intent to harm, or actual harm, or a victim of a protected class. So if it was under that general CIMT category, it still is possible to be a CIMT. And in this instance, Gaylord actually, I think Petitioner cited Sabnett, another case that is distinguishable on this case, because the Hawaii law, Gaylord actually said that it requires more than mere negligence, more than ordinary civil breach of contract for a conviction in Hawaii's statute in this case. So I think, let me just ask you again, I want to make sure I understand. You agree there's no jury instructions to look to here for this particular statute, is that right? No, Your Honor, there are some jury instructions for the different provisions in this case. For all of them? I believe most of them. There is specifically for 6 as well, subsection 6. Where are those jury instructions? For the other crimes, for the other theft crimes, not for the 4th degree. Are there jury instructions for the 4th degree theft? The 4th degree theft statute, Your Honor, I guess refers to the other statute, and the main statute of theft, there are different jury instructions for each of those subsections, Your Honor. But there's not any jury instructions for the 4th degree theft. I'm not entirely certain. So I guess what's your best, I just want to make sure I understand your argument, with respect to divisibility, as to why this is not indivisible. Yes, Your Honor. Well, I will point out, I guess in the Gwebb decision, even though that is not bonding on you, Your Honors, but they did make a note that it was not a divisible statute, and I just want to point out here that the cases, that the things that they cited was not Hawaii law. There was not a lot of analysis there. They only cited two different state statutes in that decision. So arguably, they did not do an in-depth look at Hawaii law, which could, if this is sent back, Your Honors, I think that would be the opportunity to flesh that out, if it was not a divisible statute. Well, we've already said that that is not something that we need to send to the board. So why don't you give us an argument on that? Your Honor, she asked about the divisibility, and I just wanted to point it out. But yes, Your Honor. But you wouldn't even get to divisibility, Your Honors, obviously, if this was a categorical CIMT. I understand. But let's just, all right, just bear with me. Humor me if you could. Okay, and let's say that there is not a categorical match here. So we have to move on to divisibility and determine whether this is divisible, you know, these sections. Are they means or are they divisible? What's your best argument? Are you asserting that they are divisible or not divisible? Yes, Your Honor, I think it is arguably a divisible statute, although the jury does not have to unanimously agree. If you go to the proof of the theft offense, that provision, 708-835, the legislative intent here is to make eight different crimes. It doesn't eliminate the state's burden at all to prove beyond a reasonable doubt for each of these offenses. As mentioned, there are different subsections, jury instructions, that also indicates that there's different elements to be found by the jury. And additionally, I think as discussed previously, the peak at the conviction records, if it is still ambiguous, you can do that. And in this case, the language tracks that it is subsection one to the exclusion of all other subsections in this case. That's what he was partial with. We don't know what he pledged. He did plead no contest. Yes, Your Honor. But the complaint in this case is a shepherd document that you can look at, and it clearly tracks subsection one in this case. Did you say that you understand that the jury doesn't have to be unanimous? Yes, Your Honor. That is what you said. You said the jury does not have to agree. Yes, Your Honor, but I think that the state legislative intent, that was more of a procedural reason behind the statute. Counsel, what legislative intent are you talking about? I'm really trying to follow you, but you said the jury doesn't have to agree. We're looking at the plain language of the statute. Help me out. What legislative intent? I'm sorry. It's the provision 708-835, the proof of a theft offense is where I'm getting that, Your Honor. But that's what Gaylord relied upon to say that you don't have to decide. That's what the Hawaii Supreme Court cited in Gaylord. As a procedural measure, Your Honor, however, it doesn't... That is the core of the question of whether it's divisible or not, isn't it? Isn't that the main question? Everything else revolves around with regard to whether or not a statute is divisible, i.e., whether you can send to the jury alternative versions of the subsections and say, you know, you don't have to be unanimous as to which one it is. That is one consideration, yes, Your Honor, and a main consideration. It's the central consideration. Everything else, we have to figure that out. I agree, Your Honor, but I think there are other things you can look to, like the different jury instructions for each of those. Additionally, just looking general, that it's... the legislature here wanted to make several different crimes. And that shows that it's not eliminating the burden of proving... because they specifically said in 835 that it doesn't matter what you charge, you can prove any of them. Isn't that what they said? Yes, Your Honor. I think so, yes, Your Honor. It seems to track the example in Mathis where they said, well, there's burglary, and there's different ways to commit burglary, and the law doesn't care which one you've committed. You just have to decide if you've committed burglary. And here we've got theft, and fourth-degree theft in particular. And there's no different punishment, right? And I can't see... I just can't see any indication that the jury has to decide. So while you're saying that that was the legislative intent to create different crimes, you know, that is the legal conclusion. That's what we're trying to grapple with. So if you've got something else to support that reasoning, I'd really appreciate it. It's a tricky issue. So whatever you've got, now is the time. Thank you. Your Honor, if I could just kind of briefly, I guess, conclude on that, Your Honor. I mean, I think, again, that this is an instance where it has to go back to the agency in this case to actually flesh that issue out more and to look more at Hawaii law. You specifically told us that isn't true. You really are arguing in circles here. You specifically agreed, told us that we don't have to send it to the agency to decide what Hawaii law is. Now you're saying we do have to send it to the agency to decide what Hawaii law is. Not for the divisibility question, but, Your Honor, in GUEV as well, in that case, that was an issue that was not briefed. And this is also an issue that was not fully briefed. But that's your fault. I mean, that's the thing. It was totally the government's fault. It was supposed to slow the whole thing down and put this man's life at home because you didn't brief something. They should have briefed. Your Honor, I think the agency reasonably didn't fully analyze the statute here because it was relying on the pleading admission. And it only additionally addressed what he obviously brought up in his brief to the board. And the board also affirmed here bravado and didn't reach the issue, as you can see here, in the plain face of the board's decision. It's only briefly mentioned in the footnote, Your Honor. You're not now defending those decisions, probably for good reason, because the IJ specifically didn't seem to accept the concession. And the IJ and the BIA both decided the issue. And you have been standing up here for 20 minutes and you haven't tried to defend either of those propositions. Your Honor, may I briefly conclude? Yes, please. In summary, because the court's decision in GWEB is not controlling and the board's analysis here is incomplete, we urge the court to remand the case to the board to address the matter in light of its expertise and determine whether Mr. May's conviction under Hawaii law is categorically a crime involving murder or torture. Thank you, Your Honors. Thank you. Thank you very much. Thank you both for your arguments in an interestingly difficult case. My questions will be simply submitted. Judge Berzon, I think you were going to give Ms. Lovelace a couple minutes. It's a tricky case and I took opposing counsel over time, so thank you for your patience, both of you. About two minutes. We'll give you two minutes. Go ahead.  A few brief points on rebuttal, Your Honors. The government attempts to read a standard into the Hawaii theft statute that simply does not rise to the level of the Diaz-Lizarraga intent to deprive either permanently or substantially requirement for a CIMT determination. The intent of the legislature is clear from the text of the statute itself. There are 11 subsections in the Hawaii statute. Three of those subsections do not include the intent to deprive. Four other subsections do explicitly include in the text the intent to deprive, and the other three would rise to the level of a fraud CIMT. This demonstrates an intentional choice by the legislature to use the language in subsections 5, 6A, and 6B that does not satisfy an intent to deprive either permanently or substantially. This is also clear from the jury instructions, which the prosecutor... Can I ask you a question, Ms. Lovelace? So, Diaz-Lizarraga, you seem to be distinguishing what happened here with Diaz-Lizarraga. Do you think Diaz-Lizarraga was correctly decided? Diaz-Lizarraga may have been correctly decided, but the point being that in Diaz-Lizarraga, the BIA actually correctly applied the categorical approach and identified the elements of the state statute of conviction and compared those to the generic definition of a CIMT and then set forth the rule for theft CIMTs, which governs. Here, both the IJ and the BIA failed to apply the categorical approach, which is well-established. And this is why this court owes the BIA or the agency's decision no deference and has often applied a CIMT analysis when the agency has insufficiently provided the analysis to make a CIMT determination. Counsel, you're out of time. Can I just... Isn't the answer to Judge Marquiga's question that the statute at issue in Diaz-Lizarraga required an intent to permanently deprive? That's correct. Yes, Your Honor. Thank you. Thank you. Okay. Now, thank you both. And we will submit BIA v. Wilkinson and also Diaz-Lizarraga v. Wilkinson on the briefs. And we are in recess. Thank you very much. Thank you.
judges: Berzon, Murguia, Christen